United States District Court
Southern District of Texas

**ENTERED**

September 15, 2020

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES, | § | |
| | § | |
| | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. H-99-259 |
| | § | |
| ARON DEREL HOOD, | § | |
| | § | |
| MARCELLUS TEMEL ARTERBERRY. | § | |
| | § | |
| | § | |

**MEMORADUM AND ORDER**

Should federal prisoners serving sentences much more severe than those they would receive if they were sentenced for the same crime today have those sentences reduced?  The answer is perhaps and in some cases, but not here and now.  After careful consideration of the parties' arguments, the record, and the applicable law, the court denies and dismisses the § 2255 motions and denies the § 3582(c)(1)(A) motions.  The § 3582(c)(1)(A) motions are denied without prejudice.

The reasons are explained below.

## I.      Background

Aron Derel Hood and Marcellus Temel Arterberry, convicted for 1999 bank robberies involving firearms, move to vacate the 300-month sentences they received under the law in effect when they robbed the banks and were convicted and sentenced. They ask to instead receive the 84-month sentences they could receive today under the First Step Act.

1

Armed bank robberies carry high statutory and Sentencing Guideline penalties. In February and March of 1999, Hood and Arterberry robbed two banks in Houston and Sugarland, Texas. (Docket Entry No. 244 at 17; Docket Entry No. 252 at 1). For those crimes, each has convictions for two counts of aiding and abetting an armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2, and two counts of aiding and abetting codefendants brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2. (Docket Entry No. 127 at 1–2; Docket Entry No. 126 at 1–2). Each pleaded guilty to two counts associated with one robbery. (*Id*.). The following day, after a bench trial, the court convicted both Hood and Arterberry of two additional counts stemming from the other robbery. (*Id*.). The court sentenced Hood to 494 months—over 41 years—in prison and Arterberry to 552 months— 46 years—in prison. (Docket Entry No. 127 at 3–4; Docket Entry No. 126 at 3–4). Both sentences include 300 months—25 years—for the second § 924(c) conviction. Both Hood and Arterberry were 25 when they were convicted. Hood is now 46 and Arterberry is 45. (Docket Entry No. 240 at 5; Docket Entry No. 252 at 6).

Hood asks the court to reduce his sentence in one of two ways. (Docket Entry No. 240; Docket Entry No. 245 at 16). One is to vacate two of his counts of conviction under 28 U.S.C. § 2255, based on the argument that recent Supreme Court precedent struck down the statute underlying these counts as unconstitutionally vague. (Docket Entry No. 240 at 11–17; Docket Entry No. 245 at 8). In the alternative, Hood moves for a sentencing reduction under 18 U.S.C. § 3582(c)(1)(A). (Docket Entry No. 240). Arterberry separately moves for a sentence reduction under § 3582(c)(1)(A). (Docket Entry No. 248).

In 1999, when both Hood and Arterberry received their 300-month sentences for their second counts of conviction under § 924(c), the law then in effect treated this as a successive offense with a 300-month mandatory minimum.  (Docket Entry No. 244 at 1; Docket Entry No. 253 at 1).  Today, under Section 403 of the First Step Act, the mandatory minimum Hood and Arterberry would be subject to is 84 rather than 300 months for the second § 924(c) counts. (*Id.*).  Hood and Arterberry argue that their sentences should be reduced to 84 months on the second § 924(c) counts.  (Docket Entry No. 240 at 5–10; Docket Entry No. 245 at 16 n.7; Docket Entry No. 252 at 8–16, 20).

In Hood's case, the government responded, Hood replied, and the court ordered and received a supplemental brief from Hood on his conduct while in prison.  (Docket Entry Nos. 244–247, 250).  Hood asked for time served under 18 U.S.C. § 3582(c)(1)(A), but after the government responded that he should bring the request under § 2255, Hood's counsel clarified that his request "was not literally under the compassionate release doctrine and could be construed as a timely filed [§] 2255 motion."  (Docket Entry No. 240; Docket Entry No. 245 at 8, 16 n.6).  Initially, Hood asked for a 120-month sentence on his two 18 U.S.C. § 924(c)(1) convictions, but his reply changed his request to 168 months for the two counts, reflecting the currently applicable mandatory minimum.  (Docket Entry No. 240 at 18; Docket Entry No. 245 at 16).  One count, Count 2S, already carries the 84-month sentence he seeks.  (Docket Entry No. 127 at 3).  The issue is whether the sentence for the second count, Count 4S, should be reduced.

In Arterberry's case, the court ordered and received a brief from the Federal Public Defender to supplement Arterberry's pro se motion, the government responded, and Arterberry replied.  (Docket Entry Nos. 249, 251–254).  Arterberry asked for a reduction of his sentence on

his two 18 U.S.C. § 924(c) convictions to time served with a condition of home confinement. (Docket Entry No. 252 at 17).  In the alternative, Arterberry asked that the court reduce the sentence on the second § 924(c) count to 84 months, for an aggregate sentence of 336 months. (Docket Entry No. 252 at 20; Docket Entry No. 254).

The parties dispute whether recent Supreme Court precedent invalidated the basis of two of Hood's convictions; whether Hood and Arterberry have met a statutory requirement for seeking a sentence reduction; whether the court may consider the recent change in sentencing law in reducing these sentences; and, other issues aside, whether Hood and Arterberry are too dangerous to be released early.  (Docket Entry Nos. 240, 244, 245, 247; Docket Entry Nos. 248, 252–254).

The court considers the parties' arguments against the record and under the applicable legal standards.

## II.     The Legal Standards

### A.     Vacating Convictions Under 28 U.S.C. § 2255

To vacate a conviction under 28 U.S.C. § 2255, a defendant must demonstrate that: (1) "his sentence was imposed in violation of the Constitution or laws of the United States"; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum allowed by law; or (4) "the sentence is otherwise subject to collateral attack." *See United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

A defendant "may file a § 2255 motion whe[n] a constitutional 'right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.'" *United States v. Reece*, 938 F.3d 630, 633 (5th Cir. 2019) (quoting 28 U.S.C. §

4

2255(f)(3)). The Supreme Court case Hood cites, *United States v. Davis*, 139 S. Ct. 2319 (2019), "announced a new rule of constitutional law" that "retroactively applies to cases on collateral review." *Reece,* 938 F.3d at 633–35. The question is whether the *Davis* rule applies to the convictions Hood challenges.

### B.       Reducing a Sentence Under 18 U.S.C. § 3582(c)(1)(A)

Before moving for a sentence reduction under § 3582(c)(1)(A), the defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [wait for] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see United States v. Franco*, No. 20-60473, 2020 WL 5249369, at *2 (5th Cir. Sept. 3, 2020) (holding that the statutory exhaustion requirement is mandatory).

If the defendant satisfies one of these requirements, a court "may reduce the [sentence] term" if, after considering the 18 U.S.C. § 3553(a) factors, the court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction "is consistent with applicable Policy Statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *see, e.g.*, *United States v. Chambliss,* 948 F.3d 691, 693–94 (5th Cir. 2020) (although there was an extraordinary and compelling reason to reduce the sentence, the district court did not abuse its discretion in denying compassionate release because the § 3553(a) factors weighed against release).

The § 3553(a) factors include:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;
2) the need for the sentence imposed to

(A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) afford adequate deterrence to criminal conduct;

(C) protect the public from further crimes of the defendant; and

(D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) the kinds of sentences available;

4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;

5) any pertinent Policy Statement issued by the Sentencing Commission;

6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (summarized).

In addition to considering the § 3553(a) factors, the court must examine whether there are extraordinary and compelling reasons that warrant a sentence reduction and be consistent with applicable Sentencing Commission Policy Statements. Section 1B1.13 of the Federal Sentencing Guidelines—"Reduction in Term of Imprisonment Under 18 U. S. C. § 3582(c)(1)(A) (Policy Statement)"—and the Application Notes are instructive.[1]  Under Application Note 1 of the Policy Statement, "extraordinary and compelling reasons" may exist based on one or more of the following factors:

(A) Medical Condition of the Defendant –

(i) The defendant is suffering from a terminal illness.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-state organ disease, and advanced dementia; or

(ii) the defendant is suffering from a serious physical or medical condition; suffering from a serious functional or cognitive impairment; or experiencing deteriorating physical or mental health because of the aging process; and

---

[1] The § 1B1.13 provision concerning individuals who are at least 65 years old do not apply; Hood is 46 years old and Arterberry is 45 years old. (Docket Entry No. 240 at 5; Docket Entry No. 252 at 6).

(iii) the illness, condition, or impairment substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant – The defendant is at least 65 years old; is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances –
    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children; or
    (ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Note 1 (summarized).

Courts disagree on whether Application Note 1 remained binding after Congress enacted the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).  Compare *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable Policy Statement binding the Court."), *with United States v. Saldana*, 807 F. App'x 816, 819–20 (10th Cir. 2020) (the district court did not err by considering the § 1B1.13 commentary when determining whether an "extraordinary and compelling reason" existed that warranted a sentence reduction).

The court examines the conflicting authorities below.

**III.    Analysis**

### A.     The § 2255 Motion

Hood argues that the Supreme Court's ruling in *Davis*, 139 S. Ct. at 2336, invalidates his two § 924(c) convictions.  (Docket Entry No. 240 at 11–17).  Section 924(c) imposes enhanced penalties for using, carrying, or possessing a firearm "in furtherance of" a federal "crime of violence." 18 U.S.C. § 924(c)(1)(A).  *Davis* held that one of the § 924(c) definitions of a "crime of violence," § 924(c)(3)(B), is unconstitutionally vague.  *Davis*, 139 S. Ct. at 2336.  Section 924(c)(3)(B) defined a "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).  *Davis* did not undermine § 924(c)(3)(A), which defines a "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."   18 U.S.C. § 924(c)(3)(A).

The superseding indictment and final judgment state that Hood violated § 924(c)(1), without specifying whether § 924(c)(3)(B)'s now-invalidated definition of a crime of violence applied.[2]  (Docket Entry Nos. 31, 127).  Hood argues that even if the government relied on the § 924(c)(3)(A) definition, his convictions for aiding and abetting armed bank robberies under § 2113 are not convictions for crimes of violence because one can aid a bank robber without directly engaging in violence.  (Docket Entry No. 240 at 13–17).

"In deciding whether a crime falls within the ambit of § 924(c)(3)(A), [a court generally applies] the categorial approach."  *United States v. Smith*, 957 F.3d 590, 593 (5th Cir. 2020).  A

---

[2] Arterberry did not move the court to vacate his convictions under 28 U.S.C. § 2255. Arterberry was charged under § 924(c)(1) in the same superseding indictment as Hood, and his final judgment also states that he violated § 924(c)(1) without specifying whether § 924(c)(3)(B)'s now-invalidated definition of a crime of violence applied. (Docket Entry Nos. 31, 126).

court analyzes only "the elements of [the defendant's] predicate offenses, rather than the facts [of the case], and compare[s] those elements to the elements of the 'generic' crime—i.e., the offense as commonly understood." *Id.* (quotation marks and citation omitted). "If the elements of [the defendant's] predicate offenses necessarily involve 'the use, attempted use, or threatened use of physical force against the person or property of another,' then his predicate offenses may be treated as [crimes of violence] for sentence-enhancement purposes." *Id.*

The categorical approach does not apply if the predicate offense statute "lists multiple, alternative elements, and so effectively creates several different crimes." *Id.* (alterations, quotation marks, and citation omitted). In that case, the court first determines which portion of the statute applies by considering "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 594 (citation and quotation marks omitted). "Once the charged [predicate offense] is ascertained," the court "compare[s] the generic crime's elements" to § 924(c)(3)'s "definition of a 'crime of violence.'" *Id.* at 593–94.

Hood cites out-of-circuit cases to argue that an attempted robbery or conspiracy to commit robbery under the Hobbs Act—a different statute than § 2113, the armed bank robbery statute at issue here—are not crimes of violence. (Docket Entry No. 240 at 14–16 (citing cases)). He could have cited Fifth Circuit cases analyzing conspiracy under § 924(c)(3)(A).[3] *See Reece*, 938 F.3d at 636 ("[C]onspiracy is a crime distinct from the crime that is the objective of the conspiracy. To convict [the defendant] of conspiracy to commit bank robbery, the government

---

[3] On attempt, the Fifth Circuit held "that a predicate attempt offense that includes the specific intention to commit a [crime of violence] and a substantial step in an effort to bring about or accomplish that [crime of violence], is in and of itself a [crime of violence] under [§ 924(c)(3)(A)]." Smith, 957 F.3d at 596.

was not required to prove any element regarding the use, attempted use, or threatened use of physical force. Therefore, [the defendant's] conviction for conspiracy to commit bank robbery cannot be a [crime of violence] under § 924(c)(3)'s elements clause."); *United States v. Lewis*, 907 F.3d 891, 895 (5th Cir. 2018) (citation and quotation marks omitted) ("[C]onspiracy to commit Hobbs Act robbery fails to satisfy the requirements of § 924(c)(3)(A)'s elements clause because it does not necessarily require proof that a defendant used, attempted to use, or threatened to use force."). These authorities are not persuasive because they do not concern aiding and abetting armed bank robberies under § 2113.

Hood argues that "even a conviction under 18 U.S.C. § 2113(a) would not necessarily be a crime of violence" under § 924(c)(3)(A). (Docket Entry No. 240 at 17). He observes that § 2113(a) penalizes not only bank robbery by "force," "violence," or "intimidation," but also punishes "enter[ing] or attempt[ing] to enter any bank, . . . with intent to commit . . . any felony affecting such bank, . . . in violation of any statute of the United States, or any larceny." *Id.* (citing 18 U.S.C. § 2113(a)). Hood cites a Fourth Circuit case, *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012), *abrogation on other ground recognized in United States v. Allred*, 942 F.3d 641, 653 (4th Cir. 2019), which discusses the definition of a "crime of violence" warranting a sentencing enhancement under § 2L1.2(b)(1)(A)(ii) of the Sentencing Guidelines. The *Torres-Miguel* general test for whether a crime qualifies as a crime of violence under the Guidelines "look[s] only to the statutory definition of the state crime and the fact of conviction to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies as a 'crime of violence.'" *Torres-Miguel*, 701 F.3d at 167 (citation omitted). Hood

10

argues that § 2113(a) does not meet that definition of a crime of violence because the "most innocent conduct" § 2113(a) prohibits is not violent. (Docket Entry No. 240 at 16–17).

This argument fails because the Fifth Circuit held that a "'§ 2113(a) [offense] constitutes a crime of violence' under Section 924(c)(3)(A)'s elements clause." *Smith*, 957 F.3d at 593–94 (quoting *United States v. Pervis*, 937 F.3d 546, 553 (5th Cir. 2019), *petition for cert. docketed sub nom Gray v. United States* (U.S. Dec. 31, 2019) (No. 19-7113).   As the government contends, because armed bank robbery under § 2113 is a crime of violence under § 924(c)(3)(A), aiding and abetting the robberies is also a crime of violence.  (Docket Entry No. 244 at 17).

"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  18 U.S.C. § 2(a). "A conviction for aiding and abetting requires proof that the substantive offense occurred and that the defendant (1) associated with the criminal venture; (2) purposefully participated in the crime; and (3) sought by his actions for it to succeed."  *United States v. Daniels*, 930 F.3d 393, 403 (5th Cir. 2019) (quotation omitted).  Proving a crime of violence occurred requires proof of the elements of the crime of violence.  *See Rosemond v. United States*, 572 U.S. 65, 77– 78 (2014) (a conviction for aiding and abetting an offense under § 924(c)(1)(A)'s firearm provision—the § 924(c) provision that applies here—requires showing that the defendant facilitated the offense knowing that the crime will involve using a firearm "becomes responsible, . . . for the conduct of others.").[4]

Persuasive opinions from the Seventh and Eighth Circuit reinforce the conclusion that aiding and abetting a § 2113 armed bank robbery is a crime of violence.  *See United States v.*

*Thomas*, 933 F.3d 685, 695 n.5 (7th Cir. 2019) (explaining in dicta that although *Davis* struck down § 924(c)(3)(B), a conviction for aiding and abetting the brandishing of a firearm during a § 2113(a) bank robbery fell under § 924(c)(3)(A)'s definition of a crime of violence); *Johnson v. United States*, 774 F. App'x 334, 335 (8th Cir. 2019), *petition for cert. docketed*, (U.S. Oct. 31, 2019) (No. 19-6466) (Because bank robbery [under § 2113] qualifies [as a crime of violence] under [§ 924(c)(3)(A)'s] force clause, so does aiding and abetting armed bank robbery.").

Hood's § 2255 motion is denied because his § 924(c) convictions fall under § 924(c)(3)(A)'s definition of a crime of violence, which *Davis* did not invalidate.  The court reaches this conclusion without an evidentiary hearing because the decision requires no information aside from the record, the parties' arguments, and the applicable law—the § 2255 motion does not depend on new factual allegations.  *See United States v. Allen*, 918 F.3d 457, 462 (5th Cir. 2019) (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)) (a district court may deny a § 2255 motion without a hearing "only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.").  But depending on the outcome of *Gray* and *Johnson* in the Supreme Court, Hood may move for reconsideration in this court.  *Gray v. United States*, (U.S. Dec. 31, 2019) (No. 19-7113); *Johnson v. United States*, (U.S. Oct. 31, 2019) (No. 19-6466).

### B.    The Sentence-Reduction Motions

#### 1.    The Statutory Prerequisites for Filing the Motion

The court may consider Hood's sentence-reduction motion because he filed it more than 30 days after the warden of his prison received his administrative request for a reduced sentence.

---

[4] *Rosemond* discussed a § 924(c) violation involving a drug transaction rather than a crime of

*See* 18 U.S.C. § 3582(c)(1)(A) (emphasis added) (the defendant may file a § 3582(c)(1)(A) motion after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ."); *United States v. Franco*, No. 20-60473, 2020 WL 5249369, at *1 (5th Cir. Sept. 3, 2020) ("The text [of § 3582(c)(1)(A)] . . . outlines two routes a defendant's motion can follow to be properly before the court.").  Hood presents unrebutted evidence that he mailed his request to the warden on March 17, 2020, and that the postal service delivered the request to the warden on March 19. (Docket Entry Nos. 245-3, 245-5).  The 30-day statutory period passed without a response. Hood filed his motion in this court on April 24. (Docket Entry No. 240). The warden did not deny Hood's request until May 27.  (Docket Entry No. 244-2).  It does not matter that, as the government observes, Hood did not appeal the warden's decision.

The court may also consider Arterberry's sentence-reduction request because 30 days have passed since the warden of his prison received his administrative request for a reduced sentence.  Arterberry presented unrebutted evidence that counsel sent his request for compassionate release to the warden on August 5, 2020, by mail and email.  (Docket Entry No. 252 at 8; Docket Entry No. 252-11).  More than 30 days have passed from that date.

### 2.    The Merits of the Sentence-Reduction Requests

The parties agree that Hood and Arterberry would receive a shorter sentence on the second firearm brandishing conviction if the court sentenced them today.  The First Step Act

---

violence such as bank robbery, but *Rosemond*'s logic applies in both contexts. § 924(c) applies to both crimes of violence and "drug trafficking crime[s]." 18 U.S.C. § 924(c)(1)(A).

amended § 924(c)(1), which imposes the 25-year mandatory minimum sentence that applied to

Hood and Arterberry's convictions in 1999.  As the Fifth Circuit explained,

> Before the [First Step] Act, the 25-year minimum was triggered by any "second or
> subsequent conviction under [§ 924(c)]." Now, it is triggered only by a repeat "violation .
> . . that occurs after a prior conviction under this subsection has become final." In other
> words, the 25-year repeat-offender minimum no longer applies where a defendant [like
> Hood or Arterberry] is charged simultaneously with multiple § 924(c)(1) offenses. Now,
> to trigger the 25-year minimum, the defendant must have been convicted of a § 924(c)(1)
> offense in a prior, separate prosecution.

*United States v. Gomez*, 960 F.3d 173, 176–77 (5th Cir. 2020).

Under the Act, a defendant convicted on two § 924(c) firearm brandishing counts without

a previous § 924(c) conviction would face a 14-year mandatory minimum sentence—7 years for

each count—instead of 32 years (7 years for the first count and 25 years as an enhanced penalty

for the second).  18 USC § 924(c); *Orr v. United States*, 800 F. App'x 705, 706 (11th Cir. 2020)

("Section 924(c) requires a mandatory consecutive sentence for any defendant who uses or

carries a firearm during a crime of violence . . . . If a person brandishes the firearm during the

offense, § 924(c) mandates that a minimum consecutive sentence of seven years be imposed.").

The parties also agree that the Act's amendment to § 924(c) is not retroactive and does

not apply to Hood or Arterberry directly.  (Docket Entry No. 240 at 6; Docket Entry No. 244 at

3; Docket Entry No. 254 at 5; Docket Entry No. 253 at 3); *see also Gomez*, 960 F.3d at 177

(quoting § 403(b), 132 Stat. at 5222) ("the Act itself plainly states that § 403['s amendment to §

924(c)] is not retroactive: It applies to an offense committed before its December 21, 2018

effective date only 'if a sentence for the offense ha[d] not been imposed as of such date.'").

Under § 3582(c)(1)(A)(i), Hood and Arterberry argue that the significant change in the

relevant sentencing law is an "extraordinary and compelling reason" for a sentence reduction.

(Docket Entry No. 240 at 9–10; Docket Entry No. 252 at 12).  In addition, Hood argues that a sentence reduction would help him help his mother and sister, who have health problems. (Docket Entry No. 240 at 10).  The defense also emphasizes Hood's good behavior in prison. (Docket Entry No. 247).[5]  Arterberry argues that his recent record, including earning transfer to a less secure facility and completing college-level courses, warrants a sentence reduction.  (Docket Entry No. 252 at 18, 19).  He asks to be reunited with his adoptive mother and his three children. (Docket Entry No. 248; Docket Entry No. 252 at 19).

The government responds that the Sentencing Commission, not the court, defines "extraordinary and compelling circumstances," and the applicable Sentencing Commission Policy Statement does not permit relief based on a later, postconviction change in sentencing law.  (Docket Entry No. 244 at 2, 6; Docket Entry No. 253 at 2, 9).  The government also argues that even if the court could consider the disparity between current and 1999 sentencing law, Hood and Arterberry are still too dangerous for earlier release on a reduced sentence.  (Docket Entry No. 244 at 17; Docket Entry No. 253 at 26).

The court considers each issue in turn.

### i.      Extraordinary and Compelling?

The First Step Act inspired a lively debate about district courts' discretion to reduce sentences under § 3582(c)(1)(A), as amended.  Before the amendment, only the Bureau of Prisons could bring a § 3582(c)(1)(A) motion on a prisoner's behalf.  *See Cantu*, 423 F. Supp. 3d at 351.  The Act revised § 3582(c)(1)(A) to eliminate the Bureau's role as gatekeeper and allow

---

[5] Hood mentions the threat of COVID-19 as a ground for relief in one line of his reply brief, but he does not elaborate or allege that he is particularly vulnerable to infection or more severe symptoms. (Docket Entry No. 245 at 1–2).  This fleeting statement does not influence the court's analysis.

defendants to file their own motions. § 3582(c)(1)(A).  The most recent Sentencing Commission Policy Statement, which predates the First Step Act, does not reflect this change.  *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018)  ("Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . .").  The Commission cannot update the Policy Statement because it lacks a quorum.  *United States v. Almontes*, No. 3:05-cr-58 (SRU), 2020 WL 1812713, at *3 (D. Conn. Apr. 9, 2020) (discussing the quorum issue).

Courts disagree about whether the Policy Statement still binds them in deciding § 3582(c)(1)(A) motions.  The debate has resulted in roughly three lines of cases.  *See United States v. Avery*, No. 2:07-cr-20040-2, 2020 WL 3167579, at *4–5 (June 9, 2020) (collecting authorities).  "One line of cases holds that courts may decide compassionate release [motions filed by defendants], completely unfettered by the Policy Statement," because the most recent Policy Statement assumes that the Bureau of Prisons, rather than defendants, will file sentence-reduction motions.  *Id.* at *4 (citing *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).  Put another way, § 3582(c)(1)(A) requires sentence reductions to be "consistent with applicable Policy Statements," and there is no new Policy Statement "applicable" to defendants' motions under the First Step Act.  *See Beck*, 425 F. Supp. 3d at 579.  Courts following this approach consider the current Policy Statement "helpful" but not binding.  *Id.*

A detailed opinion along these lines is *United States v. Rodriguez*, No. 2:03-cr-00271-AB- 1, 2020 WL 1627331, at *5–6 (E.D. Pa. Apr. 1, 2020).  The court stated that the Policy Statement's Application Note 1(D)—which allows the Bureau of Prison's director to determine whether a defendant's case provides an extraordinary reason for a sentence reduction other than

the specific reasons listed in Application Notes 1(A) through (C)—"recognized that it may be impossible to definitively predict what reasons may qualify as "extraordinary and compelling." *Rodriguez* argues that the Bureau director's exclusive role in Note 1(D) makes no sense under the First Step Act, which allows prisoners to file compassionate release motions if wardens do not respond to administrative requests within 30 days. *Id.* at 5. Because "Congress specifically envisioned situations where inmates could file direct motions in cases where nobody in the [Bureau] ever decided whether the motion qualified for relief under [Note 1(D)'s] catchall provision," it would be "strange" if the catch-all provision did not apply in those circumstances. *Id*. *Rodriguez* concludes that this result would effectively "penalize[e]" defendants using the new First Step Act procedure and conflict with the Act's purpose of increasing compassionate releases and avoiding the delays that the Bureau had caused. *Id.* at *5–6.

A second line of cases "holds that a court is bound by the Policy Statement, but only to the extent that the Policy Statement does not conflict with the changes in the First Step Act." *Avery*, 2020 WL 3167579, at *5 (citing *United States v. Redd*, No. 1:97-cr-00006, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020); *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *3–6 (M.D. Tenn. Mar. 4, 2020); *United States v. Maumau*, No. 2:08-cr-00758-11, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020); *United States v. Cantu*, 423 F. Supp. 3d 345, 349–51 (S.D. Tex. 2019)). Under this approach, Application Note 1(D) allows courts, not just the Bureau director, to decide if reasons for a reduction exist outside the Note (A) through (C) categories. *Id.*

Most of the relevant opinions are in these two lines of cases. *See United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, *3 (D. Kan. May 29, 2020),

17

*reconsideration denied*, No. 08-20150-02-JWL, 2020 WL 3619559 (D. Kan. July 2, 2020), and *on reconsideration*, No. 08-20150-02-JWL, 2020 WL 4284312 (D. Kan. July 27, 2020) ("The overwhelming majority of courts, . . . have . . . concluded that a court may make the necessary determination that other circumstances warrant relief [under Application Note 1(D) of the Policy Statement]."); *Almontes*, 2020 WL 1812713, at *3 ("I agree with the vast majority of district courts: I can consider whether reasons other than the inmate's medical condition, age, and family circumstances amount to an extraordinary and compelling reason to reduce that inmate's sentence.").

The third, minority line of cases takes the government's view: the Policy Statement remains controlling, limiting "extraordinary and compelling reasons" to "the enumerated circumstances in the Policy Statement and the circumstances determined by the BOP Director." *Avery*, 2020 WL 3167579, at *5 (citing *United States v. Garcia*, No. 4:05-cr-40098, 2020 WL 2039227, at *3 (C.D. Ill. Apr. 28, 2020)).

A representative case following this third, minority approach is *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *3–4 (S.D. Ala. Aug. 13, 2019), which presents two main arguments.  The first argument is that even if the Policy Statement is binding, "it does not follow that any circumstance that fails to maximize the use of compassionate release contravenes the purpose of the [First Step] Act's amendment of Section 3582(c)(1)(A)."  Even if the current Policy Statement is binding, the First Step Act still increases compassionate releases by allowing defendants to file motions; by requiring the Bureau to advertise the availability of compassionate release; and by requiring the Bureau to help prisoners prepare requests.  *Id*. at *3.  "[W]hile retaining [the Bureau] as the arbiter of [Application Note 1(D)'s] residual category may not

18

increase the number of compassionate releases, neither will it reduce them, so the net effect of [the Act] is [still] decidedly to increase the use of compassionate release." *Id*. The *Lynn* opinion concludes that the "absence" of tension between the Act's purpose and Application Note 1(D)'s current text makes the text binding on the courts. *Id*.

The second argument *Lynn* presents is that because 28 U.S.C. § 994 puts the Sentencing Commission, not courts, in charge of determining the "appropriate use" of § 3582(c)(1)(A), courts should wait for the Commission to decide if the Policy Statement requires revision. *Id*. at *4. Other courts respond that, among other things, statutes such as the First Step Act override Policy Statements, so courts should apply the Act to the extent it conflicts with the Policy Statement. *See Redd*, 2020 WL 1248493, at *7 (quoting *Mistretta v. United States*, 488 U.S. 361, 394 (1989)).

Only one appellate court has weighed in. This opinion, *United States v. Saldana*, 807 F. App'x 816, 820 (10th Cir. 2020) (unpublished), is consistent with *Lynn* but provides little guidance. *See Avery*, 2020 WL 3167579, at *5 (*Saldana* is "consistent with the third line of cases" but that it "does not directly address the issue."). The Tenth Circuit held that a district court did not err by refusing to reduce a sentence because of rehabilitation and "post-sentencing developments in [sentencing] case law." *Saldana*, 807 F. App'x at 820. The Tenth Circuit stated that "neither the [Policy Statement] commentary nor [the Bureau of Prisons] Program Statement 5050.50 identify post-sentencing developments in case law as an 'extraordinary and compelling reason' warranting a sentence reduction." *Id.* The appellate court did not analyze the Policy Statement's status under the First Step Act, although it cited Tenth Circuit precedent holding

"that § 3582(c), a jurisdictional statute, does not authorize a sentence reduction based on new case law . . . including developments in 'crime of violence' case law." *Id.*

District courts also disagree on whether, even if a court could look beyond the current Policy Statement, the First Step Act's nonretroactive reduced penalties are "extraordinary and compelling" grounds to reduce a sentence. Some courts state that considering a new sentencing policy under § 3582(c)(1)(A)(i) would be an end-run around the fact that Congress decided not to make the amendment retroactive. *See, e.g., United States v. Neubert*, 2020 WL 1285624, at *3 (S.D. Ind. Mar. 17, 2020) ("a reduction under § 3582(c)(1)(A) is not warranted because the disparity between Mr. Neubert's actual sentence and the one he would receive if he committed his crimes today is not an 'extraordinary and compelling circumstance.' Instead, it is what the plain language of § 403 [of the First Step Act] requires.").

Other courts find no inconsistency. These courts argue that although Congress did not automatically entitle every defendant subject to an old mandatory minimum to resentencing, there is a difference between a formal resentencing and individualized, case-by-case review under § 3582(c)(1)(A)(i). In other words, Congress opened the door to a reduced sentence for some, but not all, defendants. *See, e.g.*, *United States v. Gadson*, 2020 WL 2079100 (D.S.C. Apr. 30, 2020) ("Although the 'clarification' to § 924(c) limiting stacking was not made retroactive by Congress, this does not mean the court cannot consider it on an individual basis. What it does mean, however, is that Congress did not intend the sentencing disparity between defendants sentenced before and after the § 924(c) amendment to constitute a sufficient basis on its own to grant a reduction in sentence."); *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *16 (E.D.N.Y. Apr. 22, 2020) ("the Congressional decision not to make

20

the § 924(c) change retroactively spares the courts an avalanche of applications and inevitable re-sentencings, no doubt in many cases that do not feature the same grave characteristics presented here.").[6]

Still another court takes the position that the First Step Act's nonretroactive sentencing provisions are not "extraordinary and compelling" circumstances because "Congress explicitly provided for case-by-case retroactivity when it intended to do so." *Jackson*, 2020 WL 2812764, at *5.[7]  The court points out that the Act's sentencing provision that is retroactive—§ 404—allows judges to decline sentence-reduction requests. *Id.*  On the other hand, the same court suggests that, unlike other nonretroactive First Step Act sentencing provisions, the new § 924(c) mandatory minimum might be relevant under § 3582(c)(1)(A)(i) because Congress styled the amendment as a "clarification." *Id.*  Courts have argued that the "clarification" heading indicates that Congress never meant § 924(c) to require the 25-year mandatory minimum on a second § 924(c) count that was part of the same indictment as the first § 924(c) count. *Id.; see also United States v. Decator*, 2020 WL 1676219, at *4 (D. Md. Apr. 6, 2020).  Then again, Congress did not make the "clarification" retroactive.

---

[6] *See also* Shon Hopwood, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 110 (2019) ("Had Congress made the changes retroactively applicable to all, every defendant sentenced to stacked § 924(c) offenses would have been categorically eligible for sentencing relief. By contrast, those sentenced under the § 924(c) stacking provisions and seeking relief under the compassionate release provision (as amended by the First Step Act) must establish extraordinary and compelling reasons individually in order to be eligible for relief. That Congress chose to foreclose one avenue for relief does not mean it chose to foreclose all means of redressing draconian sentences imposed under § 924(c). And, as a textual matter, nothing about Congress's decision to pass prospective-only changes to § 924(c) prevents a judge from resentencing under the Compassionate Release Statute on the basis of extraordinary and compelling reasons.").

[7] The court in *Jackson* first denied and later granted the defendant's motion to reduce her life sentence to time served.  On reconsideration, the court based its decision on, among other factors, health risks related to COVID-19 and the government's statement that it supported a sentence reduction to the minimum sentence the defendant could have received under the First Step Act. *United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 4284312, at *2 (D. Kan. July 27, 2020).

Although most of the relevant court decisions (so far) favor Hood and Arterberry, their cases present a poor opportunity to decide among the competing views. Even if the court applied First Step Act's new mandatory minimum for a second § 924(c) conviction, and even if Hood received the new minimum sentence, he would still be in prison until at least March 2028. Hood did not start serving his sentences for the two § 924(c) convictions until March 2014, and his new mandatory minimum sentence on the two counts would be 14 years. (Docket Entry No. 244 at 2). If the court applied First Step Act's new mandatory minimum for a second § 924(c) to Arterberry, he would still have 79 months—slightly over six and a half years—left on the reduced sentence. (*See* Docket Entry No. 253 at 3).

The fact that Hood and Arterberry have years left in prison, combined with the divided and evolving legal landscape—which includes almost no input from the appellate courts or from the Commission itself—supports denying their sentence-reduction motions for now, without prejudice. *See United States v. Brown*, 411 F. Supp. 3d 446, 451–54 (S.D. Iowa 2019) (although the court could look beyond Application Notes 1(A)–(C), "compassionate release nevertheless is premature because even if the First Step Act applied retroactively, Defendant would still be in prison. . . . [B]ecause Defendant would still be in prison under modern law, any sentencing disparity created by § 924(c) stacking does not, at least yet, provide an 'extraordinary and compelling reason' for compassionate release.").[8]

---

[8] Several months after the cited decision, the prisoner in *Brown* persuaded the court to reconsider and reduce his sentence in light of the COVID-19 pandemic, among other factors. *United States v. Brown,* No. 4:05-CR-00227-1, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020). As noted, Hood makes a passing reference to COVID-19, but does not allege that he is particularly vulnerable or that it presents an extraordinary and compelling reason for a shorter sentence, which, in his case, would still outlast the pandemic. (Docket Entry No. 245 at 1–2).

Other courts have reduced sentences even when the defendants were not eligible for prompt release. *See United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *10 (M.D. Tenn. Mar. 4, 2020) ("[A] downward adjustment may be made even if it results in continued incarceration."); *Maumau*, 2020 WL 806121, at *7–8 (the court "need not" grant immediate release and the defendant's "young age at the time of the sentence, the incredible length of the mandatory sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment—establish an extraordinary and compelling reason to reduce [the] sentence."). In the most similar case the court has found, *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019), there was a distinguishing factor that matters. In that case, although the defendant would still have to serve almost half of the new 368-month sentence, the court ruled that "[a] reduction in his sentence is warranted by . . . the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed." *Id*. "A reduction in the sentence at this juncture will help [the defendant] and the Bureau of Prisons plan for his ultimate release from custody and may assist him in his pending efforts to seek clemency from the Executive Branch." *Id.* Neither Hood nor Arterberry has a pending clemency petition, and it is unlikely that one will be filed.

The record presents an ample basis to find that it would be prudent to rule when Hood and Arterberry might benefit from a sentence reduction, and when the applicable law may also be clearer. This approach leads the court to deny the motions for sentence reduction, without prejudice to later assertion if circumstances change.

### ii.     Too Dangerous to Release Any Earlier?

23

The government argues that the court should not reduce either defendant's sentence, even if it could consider the change in sentencing law, because Hood and Arterberry are too dangerous for earlier release.  (Docket Entry No. 244 at 17; Docket Entry No. 253 at 26).  Hood and Arterberry were gunmen in both of the 1999 robberies, in which they and their codefendants held victims at gunpoint and forced them to remove their clothes.  (*Id.*).  In one robbery, as the police arrived, Hood "told his co-defendants that they should shoot the bank employees."  (Docket Entry No. 244 at 17).

In 1991, Hood "received a 5 year deferred adjudication for the . . . unauthorized use of a motor vehicle."  (*Id.*).  Less than a year after getting this "opportunity to rehabilitate his life," Hood committed "aggravated assault with a deadly weapon."  (*Id.*).  He was on parole in 1999, when he helped rob the banks.  (*Id.*).  This history, the government says, "demonstrate[s]" Hood's "violent nature." (*Id.*).

Hood's criminal record is undeniably serious.  His actions in the 1990s inflicted grave harm.  But he was in his twenties then.  He is now in his forties.  Hood has spent almost as much of his life in prison as outside.  In more than two decades behind bars, Hood's disciplinary infractions are all minor, including: possessing a radio and an altered form "to show ownership" of the radio; possessing "gang related written material"; being in the commissary, barbershop, and at a location called "necessities" without authorization (one offense per location); disobeying an order about "necessities"; and blocking the vent in his cell.  (Docket Entry Nos. 247-2).  The most serious violations—the contraband radio and tampering with the ownership record, a state felony—are from 2007.  (Docket Entry No. 247-2 at 8).  Hood's prison file includes no violent

offenses and no infractions at all after 2010.  This is not the record of someone who is violent by nature.

Hood's family members paint a picture of a man whose choices masked his good qualities, which are becoming evident even in prison.  His mother describes him as "smart," "athletic," "artist[ic]," and driven to learn even while in prison.  (Docket Entry No. 240-11). Hood's sister reports that he "has accepted the consequences for [his] past actions," and "has had a great deal of time to reflect on making better, sound choices on what he desires out of life." (Docket Entry No. 240-12).  Hood's family members state that Hood has taken classes and worked in prison.  (Docket Entry Nos. 240-11, 240-12).  The government has not disputed that Hood has applied himself productively during his long sentence.  His sister believes that Hood's "age, time served, promising opportunities for employment, as well as the opportunity to give back to society would make him a promising candidate" for a reduced sentence.  (Docket Entry No. 240-12).  She urges the court to give him "a second chance and a new beginning in life." (Docket Entry No. 240-12).

As with Hood, the government argues that Arterberry's involvement in the robberies and his early criminal history demonstrate his "violent nature." (Docket Entry No. 253 at 26). Arterberry was involved in crime from the time he was ten through his arrest for the bank robberies in his mid-twenties.[9]  (*Id.*).  Arterberry's prison disciplinary record is more serious than

---

[9] Arterberry's criminal activity as a child and adolescent carries little weight in the court's assessment of his dangerousness today.  As the Supreme Court has explained, youthful lawbreaking is not a good indicator of adult criminal activity.  *Roper v. Simmons*, 543 U.S. 551, 570 (2005) ("the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside") (quotation and citation omitted).  This is in part because of developmental differences between children and adults, and in part because children have "limited contro[l] over their environment" and are unable to "extricate themselves from horrific, crime-producing settings."  *Miller v. Alabama*, 567 U.S. 460, 471 (2012) (alteration in original) (quotation and citation

Hood's, and includes three violent incidents.  (Docket Entry No. 252 at 7, 18; Docket Entry No. 252-9).

Like Hood, Arterberry committed serious crimes causing grave harm when he was in his twenties.  He admits that his prison record, particularly from when he first entered federal prison as a young man, is "not the best." (Docket Entry No. 252 at 18).  But Arterberry, his counsel, and his family describe his resilience and growth.  Arterberry's adoptive mother describes Arterberry as "compassionate" and "giving."  (Docket Entry No. 252-1).  She reports that Arterberry has maintained relationships with her and his children during more than two decades of incarceration, supporting "a second chance to be a productive citizen."  (*Id*.).  Now in his forties, Arterberry has recently completed college-level coursework, published a book on Amazon, and earned the right to be transferred to a less secure facility through his good behavior.  (Docket Entry No. 252 at 18–19; Docket Entry Nos. 252-7; 252-12).  Arterberry's last violent prison disciplinary infraction was eight years ago, in 2012.  (Docket Entry No. 252 at 18).  Despite the seriousness of Arterberry's crimes, the record does not show that he is the danger to the community today that he was in 1999.

As commendable as it is, the evidence of Hood and Arterberry's good behavior in prison is not an "extraordinary and compelling reason" for the sentence reduction they seek.  28 U.SC. § 994(t) provides that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason [for relief under § 3582(c)(1)(A)]."

Hood offers one additional ground for a sentence reduction: that his mother suffers from high blood pressure and general old age, and his sister, who has been his mother's caregiver,

---

omitted).  Indeed, the record in Arterberry's case reflects that he grew up in extremely challenging

now has migraines, lupus, and may have cancer. (Docket Entry No. 240-11; Docket Entry No. 240-12). The family members state that having Hood home would greatly help.

The court sympathizes with the family's needs. But Application Note 1(C) of the Sentencing Commission Policy Statement, which at minimum is relevant guidance, defines "extraordinary and compelling" family circumstances as "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Those circumstances are not present here. The record does not suggest that Hood's mother's or sister's health situations are comparably dire. Even considered together, the family's health issues and the evidence of Hood's good behavior do not persuade the court to grant relief at this time. As noted, even if the court reduced Hood's second § 924(c) conviction to seven years, he would still be in prison for many years before he could rejoin his family.

## IV.   Conclusion

The court denies Hood's § 2255 motion, with prejudice, and his § 3582(c)(1)(A) motion, without prejudice.[10]   (Docket Entry No. 240).   The court also denies Arterberry's §

---

circumstances, with an absent father and a mother who was unable to care for him due to her drug addiction and incarceration. (Docket Entry No. 252 at 4; Docket Entry No. 252-1).

[10] The court has found no authority questioning its ability to deny a § 3582(c)(1)(A) motion without prejudice and inviting the defendants to file a motion later. Although Section 404 of the First Step Act imposes limits on successive sentence-reduction motions under the Fair Sentencing Act of 2010, Section 603—the section authorizing defendants, rather than the Bureau of Prisons director, to file § 3582(c)(1)(A) motions—does not limit successive motions. *See* First Step Act of 2018, Pub. L. No. 115-391, §§ 404(c), 603(b)(1), 132 Stat 5194, 5222, 5238–39; *United States v. Mendoza*, No. 10-313(1) (DWF/FLN), 2019 WL 6324870, at *4 (D. Minn. Nov. 26, 2019) ("[U]nlike Section 404, . . . [S]ection [603(b)] of the First Step Act does not bar successive motions. Indeed, such a prohibition would not make sense for petitions for compassionate release, which is appropriate in a range of circumstances that may arise even after a court has previously found that compassionate release was inappropriate."); *see*

3582(c)(1)(A) motion, without prejudice.  (Docket Entry No. 248).  Hood and Arterberry may file § 3582(c)(1)(A) motions closer to when the change in sentencing law might make a difference; if other potentially extraordinary and compelling circumstances arise; or if the Supreme Court, the Fifth Circuit, or the Sentencing Commission clarifies the scope of a court's discretion and the meaning of "extraordinary and compelling" reasons for a sentence reduction under the First Step Act.


      SIGNED on September 15, 2020, at Houston, Texas.


_____
Lee H. Rosenthal
Chief United States District Judge

---

also *United States v. Arnold*, No. 6:04-031-DCR, 2020 WL 1290798, at *2 (E.D. Ky. Mar. 18, 2020) ("Defendants may . . . use § 3582(c) to move for reductions of sentences when § 2255 [and its limits on successive motions are] inapplicable, e.g., when they assert compassionate release claims unrelated to the validity of their underlying convictions or sentences.").   Several district courts have dismissed § 3582(c)(1)(A) motions without prejudice.  *See, e.g., United States v. Hays*, No. 18-00088-KD-N, 2020 WL 3650957, at *1 n.1 (S.D. Ala. July 6, 2020) (denying § 3582(c)(1)(A) motion without prejudice and noting that the Eleventh Circuit allows courts to consider successive § 3582(c) motions if the initial motion was denied); *United States v. Shine*, No. 3:14-cr-0451- B-5, 2020 WL 3440654, at *4 (N.D. Tex. June 23, 2020) ("By denying [the defendant's § 3582(c)(1)(A)] motion without prejudice, the Court permits [her] to mo[ve] for compassionate release in the event circumstances rise to the level of extraordinary and compelling."); *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020) (denying § 3582(c)(1)(A) motion "without prejudice to renewal based on, among other possibilities, a deterioration of [the defendant's] condition, a change in the ability of the [Bureau of Prisons] to care for him, or any other changed circumstances.").